USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: ___3/19/2026___

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

NDF1, LLC,

                                        Plaintiff,

                    -against-

JOSEPH BARATTA, DONNA BARATTA,
ET AL.,

                                        Defendants.

7:24 CV 4009 (NSR)

**OPINION & ORDER**

NELSON S. ROMÁN, United States District Judge:

The action before this Court concerns a defaulted loan secured by a mortgage on real property. Plaintiff, NDF1, the alleged holder of the subject mortgage and note after a series of assignments, argues that it has established a *prima facie* case for foreclosure. Defendants principally argue that the note was improperly transferred to Plaintiff and that they are not in default because Plaintiff's predecessor-in-interest cancelled and discharged the loan, rendering it unenforceable. Defendants assert failure to state a claim upon which relief can be granted, statute of limitations,[1] bad faith, lack of standing, and laches and/or unclean hands as affirmative defenses. Plaintiff and Defendants each moved for summary judgment and Defendants further moved to amend their Answer to assert the additional defenses of payment and/or accord and satisfaction and waiver/abandonment as well as a counterclaim to recover attorneys' fees. (ECF Nos. 53, 60.) For the reasons that follow, Plaintiff's and Defendants' motion for summary judgment are DENIED and Defendants' motion to amend their Answer is GRANTED.

---

[1] Defendants raised the statute of limitations defense in their Answer and raised it in their opposition to Plaintiff's motion for summary judgment, but failed to argue for summary judgment on this defense in their own motion; thus, the Court assumes Defendants abandoned this defense, but nonetheless addresses it in this Opinion in the interest of thoroughness.

1

**FACTUAL BACKGROUND**[2]

On September 7, 2006, Joseph Baratta ("Mr. Baratta" or "Borrower") executed a Fixed Rate Consumer Note and Security Agreement (the "Note") in the principal amount of $144,900 in favor of National City Bank ("NCB"). (Def. 56.1 ¶ 1.) To secure the Note, Mr. Baratta and the co-mortgagor, Donna Baratta (together, "the Barattas"), executed a mortgage on September 7, 2026 (the "Mortgage", together with the Note, the "Loan".) (Def. 56.1 ¶ 2.) The Mortgage encumbers the Barattas' primary residence located at 15 Campbell Avenue, Suffern, NY 10901 (the "Property"). (Def. 56.1 ¶ 3.)

On November 2, 2009, NCB assigned its interest in the Mortgage and transferred the Note to Citibank N.A. as Trustee for CMLTI Asset Trust ("Citibank Trust") (the "First Assignment"). (Pl. 56.1 ¶¶ 4-5; Def. 56.1 Opp. ¶¶ 4-5.) On September 21, 2021, Citibank Trust assigned its interest in the Mortgage and transferred the Note to United Asset Management, LLC ("UAM") (the "Second Assignment"). (Pl. 56.1 ¶¶ 6-7; Def. 56.1 Opp. ¶¶ 6-7.) On August 24, 2022, UAM assigned its interest in the Mortgage and transferred the Note to NDF1 ("NDF1" or "Plaintiff") (the "Third Assignment"). (Pl. 56.1 ¶¶ 8-9; Def. 56.1 Opp. ¶¶ 8-9.) Defendants dispute that any of the assignments were properly executed and, consequently, that Plaintiff is the party entitled to enforce the Note. (Pl. 56.1 ¶¶ 4-9; Def. 56.1 Opp. ¶¶ 4-9.) Plaintiff maintains that it is entitled to enforce the Note by virtue of its physical possession of the original wet-ink Note as of May 27, 2022. (Pl. 56.1 ¶ 10; Def. 56.1 Opp. ¶ 10.)

---

[2] Because the Parties have cross-moved for summary judgment, there are four factual statements before the Court: Plaintiff's 56.1 Statement in Support of Summary Judgment ("Pl. 56.1", ECF No. 53, Att. 2); Defendant's Opposition to Plaintiff's 56.1 Statement in Support of Summary Judgment ("Def. 56.1 Opp.", ECF No. 56, Att. 1); Defendant's 56.1 Statement in Support of Summary Judgment ("Def. 56.1", ECF No. 60, Att. 3); and Plaintiff's Opposition to Defendant's 56.1 Statement in Support of Summary Judgment ("Pl. 56.1 Opp.", ECF No. 63, Att. 1). Unless otherwise noted, a standalone citation to a 56.1 Statement denotes that this Court has deemed the underlying factual allegation undisputed. Any citations to a Party's 56.1 Statement incorporates by reference the documents cited therein. Where relevant, however, the Court may cite directly to underlying documents.

Defendants allege the Barattas made timely payments on the Loan for the first several years after its execution, but defaulted after experiencing financial hardship as a result of the Great Recession. (Def. 56.1 ¶¶ 4-5; Pl. 56.1 Opp. ¶¶ 4-5.) Plaintiff disputes that the Barattas ever made any payments and claim that the Loan remains in default for the full principal amount of $144, 900 for failure to pay the August 1, 2011 payment and all subsequent payments. (Def. 56.1 Opp. ¶¶ 4, 26.) Defendants do not dispute that they defaulted on the Loan and that the last payment toward the Loan was made some time prior to December 12, 2013, but do not recall the actual default date, and dispute that the Loan remains in default at all. (Def. 56.1 Opp. ¶¶ 28, 29.) According to Defendants, on December 12, 2013, CitiMortgage sent Mr. Baratta an Internal Revenue Service ("IRS") Form 1099-C along with a cover letter advising him that Citibank Trust was charging off the Loan and instructing him to report the discharged debt when he filed his tax return for the year 2013. (Def. 56.1 ¶¶ 8-9; Pl. 56.1 Opp. ¶¶ 8-9.) The Form 1099-C reflects that CitiMortgage was charging off the Loan in the amount of $131,671.85. (Form 1099-C, Def. Ex. R.) Defendants claim that, on December 12, 2013, CitiMortgage was Citibank Trust's authorized agent and was servicing the Loan for Citibank Trust, but Plaintiff contends that there is no evidence CitiMortgage was ever involved with the subject Loan. (Def. 56.1 ¶ 7; Pl. 56.1 Opp. ¶ 7.)

The Barattas reported the discharged debt as an exclusion from gross income on their Form 982 attached to their 2013 Joint Tax Return and were subsequently audited by the IRS "to verify the correctness of income, deductions, exemptions, and credits." (2013 Joint Tax Return, Def. Ex. S; IRS Audit Documents, Def. Ex. T.) According to Defendants, the IRS made no adverse determination concerning the reporting of the discharged Loan. (Def. 56.1 ¶ 24; Pl. 56.1 Opp. ¶ 24.)

Plaintiff alleges that it complied with Real Property Actions and Proceedings Law ("RPAPL") § 1304 by mailing 90-Day Notices to Defendants to the Property address, but Defendants dispute that Plaintiff strictly complied with the statute. (Pl. 56.1 ¶¶ 11-17; Def. 56.1 Opp. ¶¶ 11-17.) Plaintiff also advanced the due date on the Loan to May 1, 2018 to ensure the amounts it seeks to collect through this Action are within the applicable statute of limitations period. (Calvillo Decl. I, ¶ 14 and Ex. 5; Def. 56.1 Opp. ¶ 9.)

## PROCEDURAL HISTORY

Plaintiff commenced this action on May 24, 2024 with the filing of the Complaint. (ECF No. 1.) On July 30, 2024, the Court granted Defendants' motion to withdraw their jury demand. (ECF No. 19.) On August 1, 2024, the Clerk of Court entered a Certificate of Default as to Defendant M&T Bank. (ECF No. 29.)

Following discovery, the Parties moved for summary judgment pursuant to Rule 56. Plaintiff filed a memorandum of law in support of its motion for summary judgment ("Pl. Mem. of L.", ECF No. 53), a Rule 56.1 Statement ("Pl. 56.1), and a Reply in further support of their motion ("Pl. Reply", ECF No. 54). Defendants filed an Opposition ("Def. Opp.", ECF No. 56) and a Counter-Statement of Facts ("Def. 56.1 Opp."). Defendants similarly filed a memorandum of law in support of their motions to amend their Answer and for summary judgment ("Def. Mem. of L.", ECF No. 60), a Rule 56.1 Statement ("Def. 56.1"), and a Reply in further support of their motions ("Def. Reply", ECF No. 61). Plaintiff filed an Opposition ("Pl. Opp.", ECF No. 63) and a Counter-Statement of Facts ("Pl. 56.1 Opp.").

## LEGAL STANDARDS

### A. Summary Judgment Under Rule 56

Under Federal Rule of Civil Procedure 56(a), summary judgment must be granted where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it "might affect the outcome of the suit under the governing law," and a dispute is genuine where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005). The movant bears the initial burden of demonstrating the absence of any genuine issue of material fact, and the Court must "resolve all ambiguities and draw all reasonable inferences in the non-movant's favor." *Vt. Teddy Bear Co., Inc. v. 1–800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004). Once that burden is met, the nonmoving party must do more than raise "some metaphysical doubt as to the material facts" and instead "must come forward with specific facts showing that there is a *genuine issue for trial*." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotation marks omitted). The nonmoving party may not rely on "mere speculation or conjecture" to defeat summary judgment. *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 12 (2d Cir. 1986).

Local Civil Rule 56.1 requires the movant to submit a "short and concise statement…of the material facts as to which the moving party contends there is no genuine issue to be tried" and each fact is deemed admitted unless properly controverted by a correspondingly numbered response supported by admissible evidence. Local Civ. R. 56.1(a)–(d). Nonetheless, a reviewing court "may not rely solely on the statement of undisputed facts[,] ... [i]t must be satisfied that the citation to evidence in the record supports the assertion." *Vt. Teddy Bear Co.*, 373 F.3d at 244 (citing *Giannullo v. City. of N.Y.*, 322 F.3d 139, 143 n.5 (2d Cir. 2003)). In deciding a motion for summary judgment, the Court must determine not whether the evidence favors one side over

the other, but whether a reasonable jury could return a verdict for the nonmoving party. *Simpson v. City of N.Y.*, 793 F.3d 259, 265 (2d Cir. 2015). Credibility assessments and the resolution of conflicting evidence are matters reserved for the jury and are not appropriate at the summary judgment stage. *Id.*

## DISCUSSION

Because the Parties have cross-moved on largely the same issues, some of which are dispositive, the Court will consider the issues in descending order of dispositive effect, addressing threshold matters first where their resolution may render further analysis unnecessary.

## I.  Plaintiff's Standing to Enforce the Note

Defendants argue that Plaintiff cannot establish standing because the allonges are not firmly affixed to the Note and because the transfer of the Loan from Citibank Trust was invalid.

### A.  Whether the Allonges are Firmly Affixed to the Note

"Under New York Law, 'a plaintiff has standing in a mortgage foreclosure action when it is the holder or assignee of the underlying note.'" *Courchevel 1850 LLC v. Alam*, 464 F. Supp. 3d 475, 480–81 (E.D.N.Y. 2020), *aff'd sub nom. Courchevel 1850 LLC v. Koznitz I LLC.*, No. 23-7263-CV, 2025 WL 1512953 (2d Cir. May 28, 2025) (quoting *Deutsche Bank Nat'l Tr. Co. v. Benson*, 179 A.D.3d 767, 767 (N.Y. App. Div. 2020) (citations omitted)). Where standing is based on the physical delivery of the original note together with an allonge bearing an endorsement by or on behalf of the holder to the transferee, the Uniform Commercial Code ("UCC") mandates that the allonge must take the form of "a paper so firmly affixed [to the note] as to become a part thereof." NYUCC § 3-202(2). *See Nationstar Mortgage LLC v. Corrao*, 114 N.Y.S.3d 189 (N.Y. Sup. Ct. 2019) (stapling satisfies firm affixation requirement); *HSBC Bank USA, Nat. Ass'n v.*

6

*Roumiantseva*, 130 A.D.3d 983, 985 (2d Dept. 2015) (attachment by paperclip fails the firm affixation requirement).

To establish standing, in its motion for summary judgment, Plaintiff relies on the Declaration of Armando Calvillo, an authorized representative of Plaintiff, sworn to on February 11, 2025, which claims the allonge is "permanently affixed" to the Note. (Calvillo Decl. I ¶ 12.) This claim, however, contradicts the deposition of Plaintiff's Asset Manager, Lauren Wilcox, who testified that when NDF1 purchased the Loan "[we] received the collateral documents, which was the note, mortgage. *And then the trailing documents*, the assignments, and *the allonges*," thereby indicating that the allonges were received at a later date and thus were not firmly affixed to the Note upon transfer to Plaintiff. (Wilson Dep. Tr., Def. Ex. H, 15:20-16:5) (emphasis added). In its opposition to Defendants' motion for summary judgment, Plaintiff's counsel simply and inexplicably claims that Ms. Wilcox "never said that," without providing any clarification of Ms. Wilcox's testimony or a declaration of Ms. Wilcox herself. (Pl. Opp at 21.) Instead, they rely on yet another Declaration of Armando Calvillo, sworn to on April 9, 2025, which claims that "[based] on [Mr. Calvillo's] review of NDF1's business records, the original Note, with all duly affixed allonges, was in NDF1's possession prior to and on May 24, 2024, the date the Complaint was filed." (Calvillo Decl. II ¶ 13.) Mr. Calvillo further asserts that "[a]t the time NDF1 received the original wet-ink Note, the allonges were affixed to the Note." (Calvillo Decl. II ¶ 15.) These statements are unavailing, however, because Mr. Calvillo makes no claim that he has seen the original Note and the declaration is silent as to when Mr. Calvillo conducted his review of these records.

Moreover, during discovery, Plaintiff refused Defendants' request to inspect the Note to confirm if the original was in its possession with the allonges firmly affixed and whether there was

any evidence that the allonges had been removed. (Def. First Demand, Def. Ex. E) (Pl. Response to Def. First Demand, Def. Ex. F, ¶ 10). While Plaintiff is not under any obligation to produce the original Note to Defendants for inspection, "when 'the plaintiff's standing has been placed in issue by the defendant's answer, the plaintiff must prove its standing as part of its prima facie showing.'" *HSBC Bank USA, N.A. v. Srugo*, 85 Misc. 3d 1212(A), 225 N.Y.S.3d 922 (N.Y. Sup. Ct. 2025) (quoting *Nationstar Mortgage, LLC v. Calomarde*, 201 AD3d 940, 942 (2d Dep't 2022)). Here, Defendants asserted lack of standing as an affirmative defense in their Answer; thus, production of the original Note to Defendants for inspection at the time they requested it could have resolved the parties' dispute regarding the affixation of the allonges and possession. Instead, the Court is now faced with contradicting testimonies from two representatives of Plaintiff, Ms. Wilcox and Mr. Calvillo.

**B. Whether the Second Assignment from Citibank Trust to UAM was Properly Executed**

The affixation of the allonges aside, Defendants also assert that Plaintiff failed to establish that the loan was properly transferred to it. Attached to the Complaint is the Second Assignment from Citibank Trust to UAM. (Compl. at Ex. D, p. 38-39.) The Second Assignment was executed by a representative of Meridian Asset Services, LLC ("Meridian") as Attorney-in-Fact to Citibank Trust, and authorized by a Limited Power of Attorney (the "POA"). (Compl. at Ex. D, p. 40-44.) A representative of Meridian also executed the allonge purportedly transferring the Note from Citibank Trust to UAM as authorized by the POA. (Compl. at Ex. D, p. 38-44.) Under the POA, Meridian was authorized to execute documents, including assignments and allonges, relating only to "…those mortgages loans identified on Exhibit A attached hereto (the 'Mortgage Loans')." (Compl. at Ex. D, p. 41.) Defendants note, however, that Exhibit A was neither included with the recorded document nor produced during discovery. They contend that, absent Exhibit A, there is

8

no evidence Meridian was authorized to execute the allonge transferring the Note, thereby rendering UAM's standing defective and invalidating the subsequent Third Assignment to Plaintiff. (Def. Opp. at 11.) In its Reply, Plaintiff argued that it is common for the list of mortgage loans attached to a POA not to be recorded in public records because these contain confidential information that could subject borrowers to fraudulent activity and that Defendants never requested a copy of it during discovery. (Pl. Reply. at 8.)

First, Defendants did request a copy of the POA's Exhibit A during discovery, although not explicitly. In their First Demand, Defendants requested, among other things, "[a]ny and all documents that establish Plaintiff as the owner and holder of the Note." (Def. First Demand, Ex. E, ¶ 3.) Where a POA limits authority by reference to an attached Exhibit A identifying specific mortgages, that exhibit forms part of the operative grant of authority and is reasonably expected to be produced in response to a request for documents establishing ownership and holder status. Absent Exhibit A, Defendants could not assess whether the Note at issue fell within the scope of the delegation. Second, Plaintiff could have produced a redacted version of Exhibit A to mitigate its concerns about public recording of confidential records. In any event, Plaintiff noted in its Reply that it has since provided a copy of the Exhibit A to the POA and the question now becomes whether the Court will consider it. (Pl. Reply at 8.)

Defendants argue that Exhibit A has not been properly introduced as evidence and constitutes inadmissible hearsay because it is not authenticated by the maker or an individual with personal knowledge concerning its creation (i.e., Citibank Trust or Meridian). (Def. Reply at 7.) While this may true, nevertheless, at the summary judgment stage, the Court need not resolve these issues because evidence need not be submitted in admissible form so long as it could be presented in admissible form at trial. *See Smith v. City of New York*, 697 F. App'x 88, 89 (2d Cir. 2017) (per

curiam) ("We need not resolve whether the documents fall within [an] exception to the hearsay rule because, in any case, material relied on at summary judgment need not be admissible in the form presented to the district court. Rather, so long as the evidence in question 'will be presented in admissible form at trial,' it may be considered on summary judgment.") (quoting *Santos v. Murdock*, 243 F.3d 681, 683 (2d Cir. 2001). Under these circumstances, the Court considers Exhibit A for purposes of the present motions.

Here, Plaintiff introduces Exhibit A through counsel's declaration. The DeLuca Declaration claims that the POA was recorded with the Rockland County Clerk's Office on December 7, 2021, and that, after it was recorded, it was "returned to KC Wilson & Associates ('KC')." (DeLuca Decl. ¶ 9.) The DeLuca Declaration further claims that on March 31, 2025, counsel "reached out to a contact at KC for a copy of the 'Exhibit A' list of mortgage loans discussed in the POA," which was provided by a representative of KC by email. (DeLuca Decl. ¶ 10; Pl. Ex. H.) In her email, the KC representative claimed that the loan number ending in 3846 in the Exhibit A document she attached is the subject Loan, however, there are no documents or testimony in the voluminous record connecting that particular number to the subject Loan. (Pl. Ex. H.) In light of the unauthenticated production of Exhibit A, and given the gravity of an action seeking foreclosure of a primary residence, the Court cannot simply accept the document at face value without further confirmation that the identified loan by the KC representative is in fact the subject Loan; thus, a genuine dispute of material fact exists concerning the validity of the Second Assignment and, by extension, the Third Assignment.

Accordingly, because a genuine issue of material fact concerning Plaintiff's standing to enforce the Note exists, Plaintiff's and Defendants' motion for summary judgment as to Plaintiff's standing are denied.

10

**II.      Plaintiff's Burden to Establish *Prima Facie* Case to Foreclose**

Plaintiff argues that it is entitled to a judgment of foreclosure because it has established a *prima facie* case as a matter of law. (Pl. Mem. of L. at 6-9.) Under New York law, a plaintiff establishes a *prima facie* entitlement to summary judgment in a foreclosure action by producing the note, the mortgage, and proof of the defendant's default. *See Onewest Bank N.A. v. Louis*, No. 15-CV-597, 2016 WL 3552143, at *5 (S.D.N.Y. June 22, 2016), *adopted by* 2016 WL 4059214 (S.D.N.Y. July 28, 2016); *see also Gustavia Home, LLC v. Rutty*, 720 F. App'x 27, 28–29 (2d Cir. 2017) (citing *Wells Fargo Bank, N.A. v. Walker*, 141 A.D.3d 986, 987 (3d Dept. 2016)). "Once the plaintiff has established its prima facie case by presenting the Note, Mortgage and proof of default, the [plaintiff] [m]ortgagee has a presumptive right to foreclose, which can only be overcome by an affirmative showing by the [defendant] [m]ortgagor." *Onewest Bank N.A.*, 2016 WL 3552143, at *5 (internal quotations omitted).

As an initial matter, while Plaintiff has produced the Note and the Mortgage, as discussed *supra*, genuine issues of material fact exist as to Plaintiff's ownership of the Loan. On those grounds alone, Plaintiff has failed to establish a *prima facie* case to foreclose. However, in the interest of thoroughness, the Court will address whether Plaintiff has established Defendant's default, which is the core issue in this action.

**A.  Whether Plaintiff Has Established Default Under Terms of the Loan**

This analysis entails unraveling a multitude of facts. First, the Court will set out several undisputed facts. It is undisputed that Mr. Baratta received a Form 1099-C on December 12, 2013 that reflects that the amount being discharged was $131,671.85. (Form 1099-C, Def. Ex. R.) It is undisputed that the "Identifiable Event Code" reflected in Box 6 of the Form 1099-C is "G." (Form

11

1099-C, Def. Ex. R.) It is also undisputed that the "2013 Instructions for Forms 1099-A and 1099-C" state as follows:

> 7. A discharge of indebtedness because of a decision or a defined policy of the creditor to discontinue collection activity and cancel the debt. A creditor's defined policy can be in writing or an established business practice of the creditor. A creditor's established practice to stop collection activity and abandon a debt when a particular nonpayment period expires is a defined policy. Enter "G" in Box 6 to report this identifiable event.

(Def. 56.1 ¶ 13.)

And this is about as far as the parties agree.

Defendants admit that, prior to receiving a Form 1099-C on December 12, 2013, the Barattas stopped making payments on the Loan due to financial hardship arising from the Great Recession. (Def. 56.1 Opp. ¶ 28.) They contend, however, that the subsequent issuance of the Form 1099-C—advising that the lender was cancelling the Loan—together with the lender's abandonment of collection activity, constituted a waiver of Plaintiff's predecessor's right to enforce the Loan. (Def. Opp. at 13–17.) In support of this position, Defendants note that the IRS audited Mr. Baratta's 2013 joint tax return, in which the Barattas reported the discharged debt as an exclusion from their gross income on Form 982, and that the IRS made no adverse determination regarding their treatment of the Loan. (Def. 56.1 ¶¶ 23–24.) Defendants further contend that, both prior to the issuance of the Form 1099-C and for approximately seven and a half years thereafter, the Barattas did not receive any statements or other correspondence concerning the Loan. (Def. Opp. at 16.)

The assignments attached to the Complaint reflect that *Citibank Trust* held the Loan from approximately November 2, 2009 through September 21, 2021. (Compl., Ex. D at 33–39.) Notwithstanding, Defendants argue that Plaintiff's evidence of default rests on records created nearly a decade after the issuance of the Form 1099-C by Citibank Trust's *successors* or other third

parties. Defendants assert that these later-created records—and Mr. Calvillo's testimony relying upon them, including his assertion that the default date was August 1, 2011—are unreliable and insufficient to establish that Defendants actually were in default as of the commencement of this action. (Def. Opp. at 12–13; Def. Mem. of L. at 15; Response to Defendants' Second Demand, Def. Ex. L.) Defendants further emphasize that none of the documents purporting to evidence default were created by Citibank Trust—the lender at the time of the alleged August 1, 2011 default—or by its alleged servicer, CitiMortgage. (Def. Opp. at 12.) Finally, they argue that even assuming a default occurred on that date, Plaintiff has failed to produce evidence refuting their claim that Citibank Trust subsequently discharged the Loan and abandoned collection efforts. (Def. Reply at 8–9.)

Plaintiff, in contrast, argues that it has established the Barattas' default under the Loan, that the Loan was never cancelled or discharged, and that there is no evidence the Barattas made any payments toward it. (Pl. Reply at 9–17.) First, Plaintiff questions whether the Form 1099-C relates to the subject Loan at all. (Pl. Reply at 13.) During his deposition, Mr. Baratta testified about a separate property located in Nyack, New York (the "418 Property") that was foreclosed by Deutsche Bank. (Baratta Dep. Tr. 8:18–25, 9:2–6.) Plaintiff explains that Citibank, as the originator and holder of the mortgage on the 418 Property (the "418 Mortgage"), was named as a defendant in that foreclosure action. (Pl. Reply at 13.) Plaintiff further notes that the principal amount extended under the 418 Mortgage—a home equity line of credit—was $125,000. (*Id.*) The Form 1099-C reflects discharged debt in the amount of $131,671.85, consisting of $124,600 in principal and $7,071.85 in interest. (*Id.*; Def. Ex. R.) According to Plaintiff, these figures closely align with the 418 Mortgage, whereas the principal balance *alone* allegedly owed on the subject Loan is $144,900. (*Id.*)

Plaintiff also asserts that CitiMortgage—the entity that issued the Form 1099-C—never held the subject Loan and would not have been authorized to discharge it in any event. (*Id.*) Plaintiff maintains that its predecessor was *CMLTI Asset Trust*, for which Citibank served as trustee, and that there is no evidence that CitiMortgage ever held this Loan. (*Id.*)

Even assuming the Form 1099-C pertains to the subject Loan, Plaintiff argues that a Form 1099-C, standing alone, does not effectuate a discharge of debt and that the IRS treats Form 1099-C as a reporting requirement rather than a mechanism for cancelling indebtedness. (*Id.* at 12.) Plaintiff further notes that it is undisputed that the Barattas did not report the amount reflected on the Form 1099-C as gross income on their 2013 tax return, and therefore, Plaintiff's predecessor did not receive any corresponding tax benefit. (*Id.* at 15.)

Finally, Plaintiff relies on Mr. Calvillo's Declaration, which, according to Plaintiff, describes in detail Plaintiff's incorporation of records from prior servicers into its own business records to establish the outstanding principal balance and the alleged default. (Pl. Reply at 9–10.)

In light of the parties' arguments, it is clear to the Court that there are genuine disputes of material fact concerning Plaintiff's *prima facie* case to foreclose.

### 1. Gaps in Plaintiff's Proof

Plaintiff's case faces several evidentiary gaps, beginning with the authentication of prior servicer records. Plaintiff's argument relies on Mr. Calvillo's Declaration, which incorporates records from prior servicers, but Mr. Calvillo does not in fact lay out a step-by-step process of how he arrived at the conclusion that Defendants are in default. In his Declaration, Mr. Calvillo simply states that "it is in NDF1's ordinary course of business to communicate with its predecessors-in-interest to obtain information, data, and records regarding the subject loan…to incorporate those records into the Business Records for NDF1." (Calvillo Decl. I, ¶ 6.) He fails to identify what

14

records, and from when, he personally examined and relied upon to establish Defendants' default and to arrive at a default date of August 1, 2011.

Relatedly, Plaintiff also asserts a specific default date of August 1, 2011, but no contemporaneous records from Citibank Trust—the lender at the time—or an authorized party appear to be submitted. The evidence of default seems reconstructed approximately a decade after the fact, and without payment history from the relevant period (that is, predating the issuance of the Form 1099-C), a genuine issue of material fact exists.

Plaintiff also contends that the Form 1099-C possibly relates to the 418 Property in Nyack, which is plausible in light of the fact that the last four digits of the account number on the Form 1099-C does not match any of the last four digits of the three loan numbers associated with the Second Assignment (from CitiBank Trust to UAM). (Pl. Opp. at 12.) However, neither party provides conclusive evidence on the lender's intention to cancel the subject Loan.

Finally, Plaintiff's tax-treatment argument—that no tax benefit occurred because Defendants did not report the alleged cancelled debt as income in their 2013 joint tax return is unavailing. (*Id.* at 13.) While cancelled mortgage debt is generally considered taxable income, certain exclusions may apply.[3]

### 2. Gaps in Defendants' Proof

Defendants, for their part, argue that the issuance of the Form 1099-C—undisputedly issued by CitiMortgage—discharged the Loan. The record, however, leaves gaps concerning both the circumstances surrounding the issuance of the Form 1099-C and CitiMortgage's relationship to the entities involved in the securitization of the Loan. Mr. Baratta was unable to produce the

---

[3] The Qualified Principal Residence Indebtedness exclusion was a tax provision based on the Mortgage Forgiveness Debt Relief Act of 2007, which allowed taxpayers to exclude up to a certain amount of forgiven debt on their principal residence from their federal gross income. *See* "What is qualified principal residence indebtedness?", Internal Revenue Service, at: https://apps.irs.gov/app/vita/content/36/36_03_010.jsp (last accessed: March 4, 2026).

cover letter that purportedly accompanied the Form 1099-C, and the relationship between CitiMortgage, CMLTI Asset Trust (Plaintiff's purported predecessor), and Citibank (the Trust's purported trustee) remains unclear from the record.

The ambiguity is compounded by CitiMortgage's response to Defendants' subpoena duces tecum. In that response, counsel for CitiMortgage objected to the subpoena on the ground that the subpoena "defines 'Citibank Trust' as Citibank, N.A. in its capacity as the Trustee for the CMLTI Asset Trust," which counsel asserted "is not a complete descriptor of how trusts are identified in the mortgage securitization industry and is not an identifier in the format of any trust with which it is familiar." (Def. Ex. N.) Counsel further stated that CitiMortgage "does not have any documents, whether for loans it owns or loans it services, for borrowers named Baratta." (*Id.*) In the context of this action, that statement is ambiguous. The subpoena requested, among other things, "every document maintained by CitiMortgage or Citibank Trust concerning or relating to the subject Loan including, but not limited to, the payment history, monthly statements, [and] correspondence." (Def. Ex. M.) CitiMortgage's response therefore confirms only that it did not possess responsive documents *at the time of the request*, not that it never possessed such records or that it owned the subject Loan, cancelled the debt years earlier and subsequently purged all related documentation. Even if the latter were the case, the Court would reasonably expect CitiMortgage to confirm that fact explicitly in its subpoena response.

Citibank's response to Defendants' subpoena is similarly vague. Citibank stated only that "[its] records indicate that Joseph Baratta had a mortgage account with Citibank, N.A. However, there are no mortgage documents responsive to [the] request." (Def. Ex. K.) "*A* mortgage account" could be any mortgage account. It is unclear from Citibank's response whether the referenced mortgage account relates to the subject Loan or to another loan, including the 418 Mortgage

16

executed in favor of Citibank. Thus, the Court cannot determine from Citibank's response whether Citibank lacked responsive documents because the referenced mortgage account was unrelated to the subject Loan or because relevant documentation had been purged following a cancellation of the Loan. If the latter, the Court would also expect CitiBank to confirm explicitly.

Further, it is well-settled that "a Form 1099–C is not [, by itself,] evidence that a debt was discharged." *Bank of Am., N.A. v. Rolf*, 188 A.D.3d 770, 775 (2d Dept. 2020) (quoting *Wells Fargo Advisors, LLC v. Mercer,* 735 Fed. Appx. at 24)). Additionally, while a borrower is typically expected to include the cancelled debt on their tax return as gross income, an exclusion may apply, such as the Qualified Principal Residence Indebtedness exclusion.[4] Under the circumstances, there is a likelihood the Barattas qualified for such exception but this is unclear from the record and Defendants did not assert as such in their papers.

Defendants further argue that Mr. Baratta made timely payments on the Loan during its early years and therefore that the outstanding balance cannot equal the Loan's original principal amount. However, Defendants offer no documentary evidence of those payments, asserting instead that the relevant records were purged in reliance on the issuance of the Form 1099-C.

At the heart of this dispute is a classic evidentiary tension: Plaintiff lacks contemporaneous records from the time of default, while Defendants lack evidence that the lender actually intended to discharge the debt. Under New York law, discharge of a debt requires a clear manifestation of the creditor's intent to relinquish its right to payment. *See Travelers Cas. & Sur. Co. v. Dormitory Auth.-State of New York*, 735 F. Supp. 2d 42, 66 (S.D.N.Y. 2010) ("[W]aiver of a contractual right may be established by affirmative conduct or by failure to act so as to evince an intent not to claim a purported advantage…and must be based on a clear manifestation of intent to relinquish a

---

[4] *See* footnote 3.

contractual protection.") (internal quotations omitted). The issuance of a Form 1099-C, standing alone, does not conclusively establish such intent, as the form is a tax reporting mechanism that may be triggered by an identifiable event without necessarily effecting a legal cancellation of the underlying obligation. *Rolf*, 188 A.D.3d at 774–75 (explaining same). At the same time, a Form 1099-C is not legally irrelevant; depending on the surrounding evidence, it may bear on the creditor's intent. Here, Defendants rely primarily on the Form 1099-C but identify no other direct evidence demonstrating that the lender intended to extinguish the debt. Conversely, Plaintiff's proof of default rests largely on reconstructed records and a declaration incorporating prior servicer documents, without contemporaneous payment records from the time of the alleged default.

In light of these evidentiary deficiencies on both sides, the Court cannot conclude as a matter of law that the Loan is in default or that the debt was discharged. Genuine disputes of material fact therefore preclude summary judgment on Plaintiff's *prima facie* case to foreclose for either party.

## III.    Plaintiff's RPAPL § 1304 Compliance

RPAPL § 1304 requires that at least ninety days before commencing legal action against a borrower with respect to a "home loan," a "lender, assignee or mortgage loan servicer" must: send written notice to the borrower, in at least fourteen-point type, by registered or certified mail and also by first-class mail to the last known address of the borrower that the loan is in default; provide a list of approved housing agencies that offer free or low-cost counseling; and, advise that legal action may be commenced after ninety days if no action is taken to resolve the matter. *See* RPAPL § 1304. Defendants argue that Plaintiff has failed to establish strict compliance with RPAPL § 1304 because "Plaintiff relies solely on the standard office mailing practice of its attorneys, Hasbani & Light, P.C.," who "fail[] to include a detailed description of [their] procedures that are

designed to ensure proper compliance with RPAPL § 1304" and only "briefly describe[] the general process of mailing and addressing *any letter*." (Def. Opp. at 21.) The court disagrees.

Here, the DeLuca Declaration discusses DeLuca's familiarity with her firm's standard office mailing procedure to ensure notices to a borrower are properly addressed and mailed. (DeLuca Decl. § 6.) The DeLuca Declaration also provides a step-by-step procedure which is typically taken, and was taken, by Hasbani & Light, P.C. to mail the 90-Day Notices. (*Id.* ¶¶ 7-11.) DeLuca attests that she personally drafted the 90-Day Notices for the subject Loan and that said notices "were in at least 14-point type size and contained the required list of housing counselors." (*Id.* ¶ 9.) DeLuca further attests that separate 90-Day Notices were addressed and mailed to each Mr. Baratta and Mrs. Baratta at the Property, where Mr. Baratta admitted during his deposition he and his wife have lived continuously for 22 years. (*Id.* ¶ 10 and Ex. I, Baratta Dep. Tr. 10:4-14.) Plaintiff also submitted copies of each envelope, First-Class Mail receipt, and Certified Mail receipt attached to each 90-Day Notice. (*Id.*, Ex. E.)

Accordingly, there is no genuine issue of material fact regarding Plaintiff's compliance with RPAPL § 1304 and the Court finds that Plaintiff complied with RPAPL § 1304.

## IV.    Defendants' Motion to Amend Answer

Rule 15 of the Federal Rules of Civil Procedure provides that a party may amend its pleading before trial with the consent of the opposing party or by leave of court. Fed. R. Civ. P. 15(a)(2). The Rule instructs that courts "should freely give leave when justice so requires." *Id.* As the Second Circuit has explained, Rule 15 reflects two central principles underlying the Federal Rules: pleadings serve the limited purpose of providing notice of the claims and defenses to be litigated, and "'mere technicalities' should not prevent cases from being decided on the merits." *See Monahan v. N.Y.C. Dep't of Corr.*, 214 F.3d 275, 283 (2d Cir. 2000) (citing *Foman v. Davis,*

371 U.S. 178, 181 (1962). Accordingly, leave to amend should be granted "absent evidence of undue delay, bad faith or dilatory motive on the part of the movant, undue prejudice to the opposing party, or futility." *Id.* Prejudice exists where an amendment would "(i) require the opponent to expend significant additional resources to conduct discovery and prepare for trial; (ii) significantly delay the resolution of the dispute; or (iii) prevent the plaintiff from bringing a timely action in another jurisdiction." *Pasternack v. Shrader*, 863 F.3d 162, 174 (2d Cir. 2017).

Here, Defendants represent that their proposed Amended Answer "merely seeks to add facts uncovered during discovery to their existing affirmative defenses, and to use those same facts to support additional legal defenses for payment and/or accord and satisfaction and waiver/abandonment, as well as a counterclaim for attorneys' fees pursuant to RPL § 282." (Def. Mem. of L. at 7.) The Court agrees that the proposed amendments do not unduly delay the litigation, require Plaintiff to expend significant additional resources in discovery, or appear futile.

First, Defendants' proposed amendments largely elaborate on the factual basis underlying their existing third, fourth, and fifth affirmative defenses. Adding these factual allegations does not meaningfully prejudice Plaintiff, as the same facts were already explored during discovery and were addressed in Defendants' motion papers. Second, the addition of affirmative defenses based on waiver or abandonment and payment or accord and satisfaction, as well as a counterclaim for attorneys' fees pursuant to RPL § 282, does not unduly prejudice Plaintiff. These proposed defenses arise from the same set of operative facts already at issue in the litigation and therefore do not fundamentally alter the scope of the case. *See Taylor v. Deubell*, 153 A.D.3d 1662, 60 N.Y.S.3d 739, 740 (2017) ("Although the amended answer added a new theory of recovery against [defendant], it arose out of the same occurrence set forth in the original pleadings.")

20

Nor do the circumstances suggest undue delay, dilatory motive, or bad faith. Defendants disclosed both their intent to amend and the substance of their proposed amendments in a pre-motion letter filed approximately eight months after the commencement of this action and only five days after the close of discovery. (*See* ECF Nos. 43, 46.) Further, while it is true that Defendants were aware of the 1099-C when this action was filed, it was not until discovery that Mr. Baratta was able to locate the 1099-C.

Accordingly, under these circumstances, the Court finds that leave to amend is appropriate and Defendants' motion to amend their Answer is granted.

## V.    Defendants' Affirmative Defenses

Defendants' Amended Answer raised seven affirmative defenses: (1) Plaintiff fails to state a claim upon which relief can be granted; (2) Plaintiff's claims are barred by the applicable statute of limitations; (3) Plaintiff's claims are barred by its own bad faith in that it seeks to enforce a Loan that was cancelled, discharged, and abandoned by its predecessor-in-interest; (4) Plaintiff lacks standing because the Loan was not validly transferred by one or more of its predecessor and/or because the allonge to Plaintiff was not firmly affixed to the Note at the time of transfer or commencement of this action; (5) Plaintiff is barred by the doctrine of laches and/or unclean hands because Plaintiff attempts to enforce a debt that was previously cancelled and because its unreasonable delay of over ten years from the cancellation to the date of commencement of this action has prejudiced Defendants; (6) Plaintiff's claims were voluntarily waived and/or abandoned by Plaintiff's predecessor, which cancelled and discharged the Loan by issuing a Form 1099-C representing that it would discontinue collection activity and subsequently stopping collection activity; and (7) Plaintiff's claims are barred by the doctrines of payment and/or accord and

satisfaction because Plaintiff's predecessor received payment or other benefits, including tax benefits, for the cancellation of the Loan. (Proposed Amended Answer, Def. Ex. A.)

Defendants' first, third, fifth, sixth, and seventh defenses are premised on Plaintiff's predecessor having cancelled the subject Loan. Because, as discussed *supra*, genuine disputes of material fact exist as to this core issue in this action, Defendant's first, third, fifth, sixth, and seventh defenses fail.

Defendants' fourth defense similarly fails because, as discussed *supra*, genuine disputes of material fact exist as to whether the subject Loan was validly transferred to Plaintiff and whether the allonge to Plaintiff was firmly affixed to the Note.

Finally, Defendants' second defense fails because this action is not barred by the statute of limitations. An action to foreclose is subject to a six-year statute of limitations. *See*, CPLR § 213(4). Concerning mortgages payable in installments, separate causes of action accrue for each installment that is not paid and the statute of limitations begins to run on the date each installment becomes due. *See Nationstar Mtge., LLC v. Weisblum*, 143 A.D.3d 866, 867 (2d Dept. 2016); *Wells Fargo Bank, N.A. v. Burke*, 94 A.D.3d 980, 982 (2d Dept. 2012). However, once a mortgage that is payable in installments is accelerated, the entire amount is due and the statute of limitations begins to run on the entire amount. *See EMC Mtge. Corp. v. Patella*, 279 A.D.2d 604 (2d Dept. 2001); *Kashipour v. Wilmington Sav. Fund Socy., FSB*, 144 A.D.3d 985, 986 (2d Dept. 2016). An acceleration occurs when the holder of the debt commences an action to foreclose upon a note and mortgage. *See Milone v. U.S. Bank NA*, 164 A.D.3d 145, 152–53 (2d Dept. 2018). Here, even accounting for the likelihood that neither Plaintiff nor its predecessors have properly maintained the Loan file, there is no evidence in the record that Plaintiff or its predecessors accelerated the Loan prior to the commencement of this action on May 24, 2024. Further, independent of whether

22

the Loan was cancelled and when exactly the Barattas defaulted, Plaintiff chose to advance the due date on the Loan to May 1, 2018 and only seeks to recover those amounts within the applicable statute of limitations period. (Calvillo Decl. ¶ 14; Pl. Mem. of L. at 11.)

## VI.    Attorneys' Fees

Defendants also assert a counterclaim for attorneys' fees. This counterclaim also fails. Under RPL § 282, "when a mortgage on residential real property provides that the mortgagee may recover attorneys' fees as a result of the mortgagor's default, the mortgagor can recover attorneys' fees for a successful defense of a foreclosure action." *CIT Bank, N.A. v. Zisman*, No. 17CV02126CBARER, 2020 WL 8081939, at *7 (E.D.N.Y. 2020). In order to collect attorneys' fees, the mortgagor must be the "prevailing party" in the foreclosure action. *Bank of Am., N.A. v. Destino*, 138 A.D.3d 654–55 (2d Dept. 2016). As discussed *supra*, genuine disputes of material fact exist as to whether Plaintiff has standing or whether Defendants are in default of the Loan. Accordingly, Defendants have not prevailed in this action and are not entitled to attorneys' fees or equitable tolling of interest as a matter of law.

Plaintiff similarly contends it is entitled to attorneys' fees because the Loan documents permit such recovery. (Pl. Mem. of L. at 19–20.) However, because genuine disputes of material fact remain as to Plaintiff's standing, Plaintiff also is not entitled to attorneys' fees, or damages, on the basis that the Mortgage contractually authorizes such relief.

## VII.    Default Judgment Against M&T Bank

Plaintiff seeks nominal liability as to defendant M&T Bank solely for the purpose of removing M&T Bank's lien and interest that is subordinate to Plaintiff's interest. Plaintiff does not seek a monetary judgment against M&T Bank. Although it is undisputed that M&T Bank was served with the Summons and Complaint in this action on June 10, 2024 and has failed to file an

23

answer or otherwise respond to the Complaint, the Court nevertheless cannot enter default judgment at this time. As discussed *supra*, genuine disputes of material fact remain as to whether Plaintiff has established standing and a *prima facie* case for foreclosure. Accordingly, Plaintiff's request for default judgment against M&T Bank is denied.

## VIII.    Sale of Property

Plaintiff also requests that the Property be sold as one parcel. For obvious reasons, the Court denies this request as Plaintiff has not prevailed in this action.

**CONCLUSION**

For the foregoing reasons, Plaintiff's motion for summary judgment is DENIED in its entirety, although the Court holds that Plaintiff complied with RPAPL § 1304 and that its claims are not barred by the statute of limitations.

Defendants' motion for summary judgment is DENIED in its entirety and Defendants' motion to amend their Answer is GRANTED. Defendants are directed to file the Amended Answer on or before March 26, 2026.

A telephonic Pretrial Conference is scheduled for May 15, 2026 at 2:30 p.m. To open the teleconference, please follow these directions: (1) Dial the Meeting Number: (855) 244-8681; (2) Enter the Access Code: 2310 494 3855; and (3) Press pound (#) to enter the teleconference.

The Clerk of Court is directed to terminate the motions at ECF Nos. 53 and 60.

SO ORDERED.

Dated: March 19, 2026
White Plains, New York

_____
Hon. Nelson S. Roman
U.S. District Court Judge, S.D.N.Y.